Mark C. **MALTZER**, M.D., Plaintiff,

v.

**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY,**
Defendant.

No. 90–759–Civ–T–15B.

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 15, 1993.

R. Frederick Melin, Law Office of R. Frederick Melin, Patrick Dekle, Law Office of Patrick Dekle, Tampa, FL, for plaintiff.

Eliott R. Good, Law Office of Eliott R. Good, Columbus, OH, Kirk Melville Gibbons, Chorpenning, Good, Gibbons & Cohn, Tampa, FL, for defendant.

## MEMORANDUM AND ORDERS AWARDING ATTORNEYS FEES

GARRITY, Senior District Judge.

Following a jury verdict in his favor, plaintiff recovered a judgment of $657,710.31, including pre-judgment interest, against the defendant insurance company and now applies for reasonable attorneys' fees pursuant to section 627.428 of the Florida Insurance Code, which provides as follows:

(1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

\* \* \* \* \* \*

(3) When so awarded, compensation or fees of the attorney shall be included in the judgment or decree rendered in the case.

Applications for awards have been filed by four attorneys: principal trial counsel Patrick H. Dekle who took the case on a contingent fee basis and three predecessor counsel who withdrew. All of the applications are supported by detailed time records and affidavits. In procedural orders dated May 13, 1993, the Court granted defendant's motion to depose the applicants, whose depositions were taken and relevant portions filed. Comprehensive memoranda of law were filed by both parties, as were affidavits of expert attorneys as to the value of the legal services rendered. The experts' affidavits have been especially helpful due in part to the high standing at the bar of both experts, Glenn M. Woodworth, Esquire for plaintiff and Thomas J. Roehn, Esquire for defendant.

As will appear from the findings of fact that follow, in ruling on plaintiff's application, we have placed the burden of proof on the plaintiff and plaintiff's attorneys and followed

the methodology prescribed in *Florida Patient's Compensation Fund v. Rowe*, 472 So.2d 1145, 1149–1152 (Fla.1985), in the same way as did the Court in *Figa v. R.V.M.P. Corp.*, 681 F.Supp. 806 (S.D.Fla.1988). The *Rowe* rules were reexamined, generally reaffirmed and modified somewhat in *Standard Guaranty Insurance Co. v. Quanstrom*, 555 So.2d 828, 830–836 (Fla.1990). We shall address the plaintiff's claims for reasonable fees in the order of his several attorneys' representations. Unless otherwise noted, counsel's affidavits, time records, and descriptions of work performed were all adequate bases for the fees claimed.

Plaintiff's first attorney was James P. Hines, Esq. The inadequacy of his time records was evident from his application and demonstrated during his deposition, but a subsequent review indicated that twelve hours at $165 per hour are fairly compensable and plaintiff is awarded a fee of $1,980 for his services.[1]

■ Next was R. Frederick Melin, Esq. whose bill for $2,886.50 for 25.2 hours at $115 has not been challenged by the defendant. We too find it reasonable and award plaintiff $2,886.50 for his services.[2]

According to the affidavit filed by Rodney W. Morgan, Esq., plaintiff retained Shear, Newman, Hahn & Rosenkranz, P.A., of which Morgan is a member, to continue the prosecution of the suit against the defendant which had been filed by Attorney Melin. Morgan submitted two invoices, the first covering the month of August, 1991 for fees of $4,137.50 and the second covering the period from September, 1991 through January, 1992 when the firm withdrew and trial counsel Patrick H. Dekle, Esq. took over. Morgan's second invoice was for fees of $22,934. Both invoices are vulnerable, as follows. The first

invoice does not specify the attorney performing the work described nor the hours worked on particular dates in August, 1991 nor the total number of hours for the entire month. On the other hand, it seems highly probable on the basis of the work described and from the detailed entries beginning in September that the invoice refers to time spent by Mr. Morgan. Also his hourly charge of $150 has not been objected to as unreasonable and indeed is, we find, quite reasonable in view of Morgan's training and experience. Additionally, plaintiff paid the first invoice without protest (plaintiff is now seeking reimbursement). It is readily inferable, we believe, that Morgan devoted approximately 27.6 hours toward advancing plaintiff's claim during August 1991; and it seems unfair to deny plaintiff recovery of fees paid for services including corresponding with defense counsel, doing required legal research, preparing for and attending a motion hearing before a magistrate and the like. After deducting 7.6 hours for time related to taking over representation from Attorney Melin, we find that plaintiff has proved entitlement to half of the remaining 20 hours and award $1,500 for services performed during August, 1991.[3]

The second invoice from Morgan's firm, which plaintiff did not pay, describes services performed by either members or employees of the firm by the hour on particular dates at specified individual hourly rates. Defendant has not objected to the reasonableness of hourly rates nor to the accuracy of the descriptions of the work performed; and defense expert's calculations adopt the hourly rates claimed. However, defendant does challenge the inclusion in the second invoice of various types of services therein described and employs two avenues of attack in the form of a supplemental brief filed on June 18,

---

1. Hines' services were performed previous to suit being filed by Attorney Melin, and the Court entertained doubt whether section 627.428, which specifies an "attorney prosecuting the suit", is applicable. However, defendant and its expert both suggested a fee for Hines in the amount here awarded and we deem the point, if it has validity, to have been waived.

2. Out of pocket expenses by counsel remain the obligation of the client and are not covered by

the Florida statute. Claims for them by Attorney Melin and some others are disallowed. The amount of recoverable court costs, $3,959.69, has been stipulated.

3. Defendant's several memoranda on fee applications did not discuss Morgan's first invoice; nor was it mentioned in defense expert's acknowledged but unsworn statement.

1993 in conjunction with its expert's affidavit. In the expert's opinion, 40.2 hours should be deducted from Morgan's total of 176.9 hours because of "repetitive work, file review or setup caused by transferring law firms so many times and some inefficiencies of too many attorneys working on the case." As stated below, the Court agrees with this criticism to some extent and disallows compensation for some of the hours claimed. However, a careful analysis of the expert's breakdown of time considered to have been unreasonably spent, when compared to substantive arguments advanced in the defendant's supplemental brief filed the same day, shows that the expert generally disallowed hours on the grounds argued by the defendant rather than for the reasons cited in his affidavit. For example, a principal objection by defendant to several applications is that they include time spent researching the applicable law and seeking evidence of bad faith on the part of the defendant in processing and rejecting plaintiff's claim of total disability. Of 46.2 hours claimed for services by Marilyn Drivas, defense expert disallowed 14.7 hours. She spent 5 hours on September 9 and 7.5 hours the next day researching and preparing a memorandum on that bad faith question. Of a total of 7.9 hours claimed by plaintiff for services by Richard W. Blyler, all on September 16, 17 and 23 for preparation and revision of interrogatories described in a September 13 entry by Morgan as bad faith interrogatories, defendant's expert disallowed 3.9 hours, apparently, though not explicitly, because about half of the interrogatories pertained to the bad faith question.

■ Defendant's position is that plaintiff never asserted a bad faith claim against the defendant, that bad faith had nothing to do with this case and that any time spent by plaintiff's counsel on that question should be disallowed. We disagree on several grounds. First, a count for bad faith may be joined in a suit for breach of an insurance contract in some jurisdictions (e.g., in Tennessee, the state of defendant's incorporation, according to plaintiff's memorandum filed June 25,

1993). Once plaintiff learned that it could not be so joined under the law of Florida, he did not pursue it. However, it does not follow that evidence of bad faith was automatically irrelevant. In our view, the instant case is similar to *Figa v. R.V.M.P. Corp.,* *supra* at 809, where it is stated,

> In its investigation of the bad faith and fraud claims, the defendant [in counter-claims] necessarily discovered evidence that would help him in the breach of contract claim.

Moreover, plaintiff's preparation on the factual aspects of the bad faith question proved at trial to be relevant during the cross-examination of defendant's zone manager Thomas Timpanaro, the gist of whose testimony on direct was that, in deciding to reject plaintiff's disability claim, he proceeded carefully and in good faith.

■ Defendant also objects to the inclusion in the Morgan affidavit, and in Dekle's too, of hours worked by paralegals. Citing several cases filed in federal courts under 42 U.S.C. § 1983 defendant contends that counsel's cost of paralegals should be included in a successful plaintiff's bill of costs. In this respect there is again a discrepancy between defendant's position and that of its highly qualified expert whose recommendations include awards to paralegals. In ruling on this issue, we also rely again on Florida law. *Figa v. R.V.M.P. Corp., supra* at 809: "Paralegal and law clerk time after October 1, 1987, can be included in the setting of attorney's fees." [4] Defendant's objection here is overruled.

We have reviewed the second invoice to determine the extent to which it records excessive hours for repetitive work, file review by newly retained counsel and too many attorneys working on the case; and adopt defense expert's opinion as to the amounts claimed by plaintiff for services by Rodney W. Morgan and Marina Y. Scar, i.e., we allow only 71.6 hours for Morgan and 2.8 hours for

---

**4.** The *Quanstrom* decision, in n. 4 at 555 So.2d 832, noted that the Supreme Court in *Missouri v. Jenkins,* 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) factored into reasonable fees the cost of paralegals and law clerks.

Scar. As to other attorneys whose compensable time defendant would reduce, viz., Drivas, Blyler and Rosenkranz, we find that all of the time reported by them was reasonably expended on this litigation. The consequences of the rulings set forth in the previous paragraphs are shown in the following table listing hours reasonably required, undisputed hourly rates of compensation and total fee awarded:

| | Hours | Rates | Fee |
|---|---|---|---|
| Morgan | 7.16 | $150 | $10,740 |
| Halen | .8 | 170 | 136 |
| Schmedt | 21.5 | 105 | 2,257 |
| Drivas | 46.2 | 115 | 5,313 |
| Blyler | 7.9 | 130 | 1,027 |
| Quentarros | 2.5 | 100 | 250 |
| Scar | 2.8 | 65 | 182 |
| Rosenkranz | 6.4 | 175 | 1,120 |
| | | | |
| Second Invoice | | | 21,025 |
| First Invoice | | | 1,500 |
| | | | |
| Total | | | $22,525 |

Accordingly, plaintiff is entitled to recover $22,525 for services rendered by Shear, Newman, Hahn & Rosenkranz, P.A.

Turning now to plaintiff's application based on services by trial counsel Patrick H. Dekle, his affidavit and supporting records of hours worked and plaintiff's expert's affidavit present several issues in addition to those heretofore discussed. Unlike predecessor counsel, Dekle took plaintiff's case pursuant to a contingent fee agreement and has applied for a fee enhancement by a contingency risk multiplier. Defendant has raised numerous objections to Dekle's application, which we shall address in the course of following the road map drawn by Mr. Justice Overton in the *Rowe* and *Quanstrom* decisions and mindful of the axioms therein quoted from *Baruch v. Giblin*, 122 Fla. 59, 63, 164 So. 831, 833 (1935), as follows:

> Lawyers are officers of the court. The court is an instrument of society for the administration of justice. Justice should be administered economically, efficiently and expeditiously. The attorney's fee is, therefore, a very important factor in the administration of justice.

Of the three categories of cases established in the *Quanstrom* decision, the instant case clearly belongs in the second category.

■ On the question of the number of hours reasonably expended by Dekle on this litigation, the opinions of the experts were of little assistance. Plaintiff's expert simply adopted the total hours recorded by Dekle and by his independent contractor Robert J. Shapiro, Esq., without, incidentally, referring to the latter in any way. Defendant's expert, while stating that his opinion was based upon a review of Dekle's time accounting, followed the same course as has been described *ante* regarding Morgan's fee: he deducted from Dekle's claimed total of 330.6 hours the specific number, viz., 33.7 hours, challenged by the defendant in its supplemental brief. Shapiro's claimed total of 67 hours was not objected to by the defendant and accordingly accepted without question by defendant's expert. The court has weighed each of defendant's ten objections to Dekle's claimed hours and rules as follows: sustained as to time spent before filing his appearance for plaintiff (8.6 hours), on motion for protective order which was without merit (1.4) and objecting to defendant's discovery of affidavits used by plaintiff at the arbitration hearing (.8), a total of 10.8 hours which we find was not reasonably expended in prosecuting this suit. Defendant's six other objections are overruled. In our view, Dekle's research of possible repudiation of the contract by the defendant (4.0) was reasonable, because inextricably intertwined with the law governing alleged breach of contract, not unlike questions of bad faith heretofore discussed.[5] Regarding defendant's objection to plaintiff charging his regular hourly rate for travel time to and from California (23), we further address this *post*, noting here that (a) the depositions there were scheduled by the de-

---

5. Incidentally, research assistant Shapiro spent more time on the repudiation question than did Dekle; yet no objection to the reasonableness of Shapiro's hours was made by the defendant.

fendant, (b) Dekle has represented that he worked on the case while flying, and (c) attendance by trial counsel rather than by a corresponding attorney in California was essential. We rule that these 23 hours were reasonably expended.

■ Defendant has also objected to Dekle's inclusion of hours spent post-trial preparing his own application for fees and notifying predecessor counsel to do the same. Defendant calculates 4.3 hours of such time, whereas we find only seven entries totalling 2.1 hours. Despite defendant's having filed on June 25, 1993 a memorandum attaching a precedent on this question, *State Fair Mutual Automobile Insurance Co. v. Moore*, 597 So.2d 805 (Fla. 2 DCA 1992), this is a trifling issue in this case, since plaintiff has not sought recovery for fees covering many more post-trial hours attending depositions and filing memoranda pursuant to the Court's procedural orders entered May 13, 1993. As to the merits, we believe that *Moore* and other decisions cited by defendant support rather than oppose inclusion of such time in cases where a successful plaintiff is entitled by statute to recover a reasonable sum as attorneys' fees. The answer to the question whether plaintiff has an interest in the fee recovered would seem to be: to the extent that fees are recoverable under the statute, plaintiff's share of the verdict is correspondingly increased. Hence he does have an interest. In any event, defendant's objection to Dekle's hours in this respect, whether 2.1 or 4.3, is overruled. Other objections made by defendant to various entries for 2.6, 1.6 and 1.1 hours have been considered and are overruled summarily.

We have examined Dekle's time records completely and find 319.8 (rounded off to 320) hours to have been reasonably expended on this litigation. We have similarly examined Shapiro's statement and find his claimed total of 67 hours to be reasonable. Dekle also employed a paralegal who assisted him in preparing the case for trial and filed a detailed breakdown of her services, claimed

to have taken 92 hours. Defendant's objection to inclusion of any paralegal work has been rejected *ante*. The defendant's expert allowed compensation for this work and expressed the opinion that her hourly rate of $65 is very reasonable; but believed that 30 of her recorded hours were duplicative of work performed by prior counsel and that compensation for only 62 hours should be allowed. We disagree. We have again reviewed prior counsel's applications and find that virtually none of the work done by Dekle's paralegal duplicates work previously accomplished. It is apparent that their services focused on pretrial discovery with a view to achieving a favorable settlement. Only when Dekle took over were summaries of depositions, chronological analyses and lists of likely exhibits prepared with a view to trial. We find all 92 hours of Dekle's paralegal time to have been reasonably expended and the $65 hourly rate very reasonable, for a total here of $5,980.

■ The reasonable hourly rate for Dekle must be determined by application of the eight criteria set forth in Disciplinary Rule 4–1.5 (formerly Rule 2–106(b)) of the Florida Bar Code of Professional Responsibility, except for the first and second clauses of factor (1) and the last clause of factor (4). This we have done and find that the reasonable hourly rate for Dekle's services is $300. Without expounding *seriatim* on each of the factors we have considered, those looming largest in our calculations are factors (3), (4) and (7). Initially we have given weight to Dekle's oath that his hourly rate is $300. Next we have considered the opinions of the experts. According to defendant's expert: "skilled trial attorneys with 22 years of experience such as Mr. Dekle charge in the area of $250 for their time." According to plaintiff's expert: "the customary hourly rate ... charged in this legal community by lawyers of equivalent experience and reputation to Mr. Dekle ranges from $250 per hour to $350 per hour ...[6] The average hourly rate for all work

---

**6.** The part omitted here reads, "[B]y this it is meant that certain services are worth less per hour and other services are worth more within the framework of the given case." We agree with and have employed this principle. For ex-

ample, the time spent by Dekle flying home from California two days after the last of four depositions was worth less than the $300 average, but by no greater amount than that above the $300 average for his exemplary conduct of the trial.

done on a case such as this is $300." As for factor (4), plaintiff was born in 1951 and the level of his income and style of living for the rest of his life depended on the outcome of this litigation. Regarding factor (7), Dekle's conduct of the trial showed much more than a skilled trial attorney with 22 years of experience. Rather it bore out the appraisal by plaintiff's expert that Dekle "has achieved stature approaching preeminence." In our opinion as a former law school teacher of trial advocacy, Dekle demonstrated extraordinary selectivity of key evidence and focus on controlling issues, skillfully presenting all of the evidentiary muscle and virtually none of the evidentiary fat of plaintiff's case.

Mr. Shapiro's listing in Martindale Hubbell describes him as an AV-rated project attorney who acts as a temporary partner on a short-term basis enabling other lawyers to conclude their cases without adding staff or associating co-counsel. Plaintiff's application does not propose a reasonable hourly rate for Shapiro nor does Shapiro's statement of professional services addressed to Dekle, with whom he has no formal agreement, only a "working arrangement" whereby Dekle "knows I expect to be paid." Shapiro has, however, attached to his statement an impressive list of important litigation in which he has participated and has 16 years experience. After considering the eight code factors, we agree with and adopt the assessment by defendant and its expert and find a reasonable hourly rate for Shapiro of $150.

Recapitulating in the order discussed *ante,* the resultant lodestars for the four applicants is as follows:

| | |
|---|---|
| Mr. Hines | $ 1,980.00 |
| Mr. Melin | 2,886.50 |
| Mr. Morgan, et al | 22,525.00 |
| Mr. Dekle, et al | |
| Personally | 96,000.00 |
| Mr. Shapiro | 10,050.00 |
| Ms. Paralegal | 5,980.00 |
| Total Reasonable Lodestars | $139,421.50 |

As previously stated, Hines and Melin were retained by plaintiff and have been paid in full. Morgan's first invoice has been paid; his firm's second invoice, still outstanding, billed compensation on an hourly basis. Hence the question of a contingency risk factor applies only to Dekle and perhaps to Shapiro.

■ We have considered whether or not to apply a lodestar multiplier to Dekle's fee and have followed the blueprint derived from the *Rowe* and *Quanstrom* decisions, as follows:

Here, we reaffirm the principles set forth in *Rowe,* including the code provisions, and find that the trial court should consider the following factors in determining whether a multiplier is necessary: (1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors set forth in *Rowe* are applicable especially, the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client. Evidence of these factors must be presented to justify the utilization of a multiplier.

Evidence presented by Dekle included as to *Quanstrom* factor (1) that capable predecessor counsel Morgan was unwilling to continue with the case on a contingent fee basis and that the several defenses elected by the defendant presaged protracted discovery proceedings and a hard fought trial; and as to factor (2) that plaintiff was unable to pay Morgan's second invoice and had discontinued his busy medical practice and had recently concluded a difficult divorce proceeding; and as to factor (3) that a monthly annuity of $8,500 was at stake and narcolepsy is probably a permanent disease. The jury's special verdict established for purposes of collateral estoppel that plaintiff was totally disabled not only at the time of filing his claim with the defendant company but was continuously disabled from that date until the time of trial. Therefore, unless plaintiff's narcolepsy goes into remission, the value to the plaintiff of the jury's special verdict far exceeds the $657,710.31 judgment entered on February 26, 1993. Clearly, the question is not whether Dekle is entitled to a lodestar multiplier but rather the amount of the same.

As we see it, this litigation was far from a typical breach of insurance contract case. The nature and asserted totality of the plaintiff's disability presented close jury issues.

Sub-issues included when plaintiff's narcolepsy first manifested itself, whether it was a preexisting condition, the relevance *vel non* of hospital staff credentials and the confidentiality of certain records. Plaintiff's credibility was debatable on various grounds and his honesty was challenged by suggestions that he was feigning or malingering (the latter was disavowed by defendant only late in the trial when the Court questioned a defense expert witness directly). These and related considerations led the plaintiff's expert to recommend the maximum enhancement figure which he understood to be a factor of 3.[7]

Defendant's expert recommended a multiplier of 1.75, but for the most part on grounds with which we disagree. He emphasized that Dekle and predecessor plaintiff counsel felt that plaintiff's was such a strong case that defendant might be liable in bad faith and for punitive damages for its rejection of plaintiff's claim. True, counsel researched possible joinder of a bad faith claim, but in our view it does not follow that such a claim, assuming that it were allowed under Florida law, could be established readily. Given the defendant's long experience in processing disability claims, its reputation for prompt payment of valid claims, its zealous defense against plaintiff's claim already evident from its dealings with Attorneys Hines, Melin and Morgan and the unwillingness of capable counsel to continue their representation on a contingent basis, we agree with plaintiff's expert that the case was a "long shot" when Dekle filed his appearance. Also, Dekle's careful checking into plaintiff's background and credibility before filing his appearance indicated that he suspected he was inheriting a loser, i.e., a case other lawyers wished to avoid handling. On the other hand, defendant's expert also pointed out what we consider to be a weightier basis for

optimism that plaintiff would prevail, viz., that plaintiff was a sympathetic, highly educated litigant against a large insurance company. Nevertheless, after considering these and all relevant factors we determine that success was unlikely at the outset of the case and even more so when Dekle took over and thus we apply a multiplier of 2.5.[8]

■ Whether or not Shapiro is entitled to a multiplier is a muddy question which defies straightforward analysis because of the paucity of his and Dekle's submissions. First, despite describing himself as a temporary partner of the attorneys with whom he works, it is less than crystal clear that Shapiro worked for Dekle on a contingent fee basis.[9] Next, Shapiro never billed Dekle at an hourly rate of compensation nor claimed one in this case. Third, neither party has discussed the *Quanstrom* case factors with reference to Shapiro. Plaintiff's expert lumped Shapiro in with Dekle for purposes both of a reasonable hourly fee and entitlement to the maximum multiplier, but without explanation or elaboration. The Court may not award a multiplier on such a meager showing. Fortunately from the plaintiff's standpoint, defendant has conceded, probably on the basis of its knowledge of Shapiro's qualifications and industry and practice of joining other attorneys as a temporary partner, that a multiplier of 1.75 would be reasonable. We adopt defendant's position and award a fee of $17,587.50 as reasonable.

Thus the reasonable fee for Dekle and his employees, when enhanced by the 2.5 and 1.75 multipliers discussed in the previous paragraphs is a total of $263,567.50, comprising $240,000.00 for Dekle, $17,587.50 for Shapiro, and $5,980.00 for the paralegal.

---

**7.** Plaintiff's expert surprisingly overlooked the explicit modification of the *Rowe* formula in the *Quanstrom* case. The maximum allowable multiplier is now 2.5.

**8.** As indicated *ante,* plaintiff prevailed on the entire claim pursued in this litigation. He made no unsuccessful claims. Hence no adjustment is appropriate on account of the second *Rowe* cap pertaining to "results obtained."

**9.** At his deposition, Shapiro testified regarding his assisting Dekle, "[W]e have a working rela-

tionship. He knows I expect to be paid." At no time was he asked about a contingent fee multiplier. Also, Dekle's contingent fee contract with plaintiff provides at page 2 under the heading, Additional Legal Sources, "I/we hereby empower my/our attorney to employ at his expense other lawyers to perform special legal services ..." and Dekle's affidavit filed March 23, 1993 states, "it became necessary for me to hire attorney Robert J. Shapiro to aid me in legal research."

The final question here presented is whether the first of the two *Rowe* caps is applicable. The *Quanstrom* case, *supra* at 834, reaffirmed the *Rowe* rule that "in no case should the court-awarded fee exceed the fee agreement reached by the attorney and his client." The contract between Dekle and the plaintiff tracked for the most part the provisions of Rule 4–1.5(f)(4)(B)(i)(b) of the Florida Bar Code of Professional Responsibility by providing for a contingent fee of 40% of any recovery up to $1 million. Plaintiff's recovery occasioned by Dekle's representation we compute as of February 26, 1993, the date of judgment, to be $685,101.81 comprising the judgment amount of $657,710.31, the fees of $6,366.50 already paid by plaintiff to predecessor counsel Hines, Melin and Morgan and the fee of $21,025.00 still owed by plaintiff to Morgan. The $263,567.50 fee which we have found to be reasonable for Dekle amounts to 38.5% of plaintiff's recovery. Hence the first *Rowe* cap, as well as the second *Rowe* cap discussed *ante*, is also inapplicable.

 Because the issue has been raised by plaintiff's expert and being mindful of the principles quoted *ante* from *Baruch v. Giblin*, we rule additionally that counsel awarded a reasonable fee pursuant to section 627.428 of the Florida Insurance Code may not collect a further fee from the insured for services rendered in connection with litigation to which section 627.428 applies, i.e., trial counsel for plaintiff in this case may not bill plaintiff for the 40% fee provided by their contingent fee contract dated February 17, 1992.[10] In our opinion the clear intent of the Florida legislature in enacting section 627.428 was to protect the insured, not to benefit his attorney, however capable, and to restore an insured insofar as practicable to the same position he would have been in if his claim for coverage had been granted without litigation. The effect of our ruling on this point will be to make the plaintiff whole. See

*Inacio v. State Farm Fire & Cas. Co.,* 550 So.2d 92, 95, n. 4 (Fla. 1st DCA 1989) in which the court analyzed *Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) and concluded that the intent of the Florida legislature was not significantly different from that of Congress in enacting 42 U.S.C. § 1988, as follows:

> Should a fee agreement provide less than a reasonable fee calculated in this manner, the defendant should nevertheless be required to pay the higher amount. The defendant is not, however, required to pay the amount called for in a contingent fee contract if it is more than a reasonable fee calculated in the usual way.

> \* \* \* \* \* \*

> Thus it is that a plaintiff's recovery will not be reduced by what he must pay his counsel.

> \* \* \* \* \* \*

We see no significant difference between the intent and purpose of sections 624.155(3) and 627.428, Florida Statutes (1987) in providing for the award of attorney's fees to the prevailing plaintiff, and the intent and purpose of section 1988 being discussed by the Supreme Court.

The amended judgment entered contemporaneously with the filing of this Memorandum and Order Awarding Attorneys Fees embodies *nunc pro tunc* all of the Court's rulings.

---

10. Nor, *a fortiori*, may Dekle bill plaintiff for a percentage of a "recovery" of a gross sum including the fee awarded by the Court. The contingent fee contract provides, "[I]f an award of attorney's fees like that is made to me/us, that fee shall be added to the judgment or settlement as a lump sum total and the fee charged to [sic] me/us will be based on the total .... any amount paid as "attorney's fees" by or on behalf of any defendant will be combined with and considered part of the total recovery ..." At least in the context of a suit to which section 627.428 applies, we consider the quoted provisions nugatory, except perhaps to raise the ceiling of a permissible reasonable fee award without exceeding the first *Rowe* cap.