# Third District Court of Appeal

## State of Florida

Opinion filed December 30, 2015.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D14-1248
Lower Tribunal No. 12-10311

————————————

## Citizens Property Insurance Corp.,
Appellant/Cross Appellee,

vs.

## Dolores Pulloquinga,
Appellee/Cross Appellant.

An appeal from the Circuit Court for Miami-Dade County, Stanford Blake, Judge.

Methe & Rockenbach and Kara Berard Rockenbach and Lauren J. Smith (West Palm Beach); Baumann, Gant & Keeley and Loren S. Gant and Gary F. Baumann (Ft. Lauderdale), for appellant/cross appellee.

Greenspoon Marder and John H. Pelzer (Ft. Lauderdale), for appellee/cross appellant.

Before SUAREZ, C.J., and WELLS and LOGUE, JJ.

SUAREZ, C.J.

Citizen's Property Insurance Corporation ("Citizens") appeals a Final Judgment for Plaintiff's Attorney's Fees and Costs entered in favor of Appellee

Dolores Pulloquinga in connection with her first-party property damage claim. Citizens challenges the Final Judgment on three grounds: the trial court's application of a multiplier of 1.5; the taxation of fees for travel time; and the award of costs for a back-up expert and for travel expenses. We affirm the application of the multiplier, but reverse the award of travel time and expenses as well as the expert's fee.

The general background of this case is that Pulloquinga had a homeowner's insurance policy with Citizens. In May 2011 her house was destroyed by fire, which Pulloquinga immediately reported to Citizens. Pulloquinga sat for an EUO with no counsel and provided documents to support the loss. Citizens initially provided $5,000 to Pulloquinga, but it made no other payments to her and she eventually had to file this action to attempt to obtain payment under her policy. For the two years between the date of the fire and the trial date of this action, Pulloquinga was required to maintain payment on her mortgage as well as provide for alternative housing, including at certain points having to stay in friends' homes and at other times in "meager" housing due to her dire financial situation.

This action was filed in March 2012 and the ensuing litigation was highly contentious. Citizens accused Pulloquinga of arson, threatened Section 57.105

sanctions and claimed there was no coverage for the loss. Approximately 27 depositions were taken from Jacksonville to Key West and multiple hearings were

held, including four summary judgment motion hearings. The case was also scheduled for trial twice. Summary judgment was eventually entered in Pulloquinga's favor on all of Citizens' defenses.[1] On the eve of the rescheduled trial in May 2013 Citizens capitulated and agreed to pay the full policy limits as well as Pulloquinga's attorney's fees and costs. After some stalling on Citizen's part, the policy limits were eventually paid. Pulloquinga then sought determination of the amount of fees and costs from the trial court, which required yet additional hearings on her entitlement because Citizens took the unsupportable position that she had assigned her right to entitlement. The trial court properly rejected that argument.

After the hearing on the amount of fees, the trial court entered the 12-page Final Judgment for Plaintiff's Attorney's Fees and Costs, which is the subject of

[1] Citizens raised affirmative defenses of proper enforcement of the policy; Pulloquinga's failure to comply with conditions precedent in the form of failing to provide proper documentation; absence of breach of contract; policy violations in the form of misrepresentations of ownership and absence of business being conducted on the property in the policy application; and concealment also in the form of misrepresentations in the policy application and in providing false prices for items claimed to be lost. Citizens had also raised affirmative defenses of subrogation, failure to state a cause of action, failure to comply with policy conditions and spoliation of evidence by Pulloquinga, but those were stricken by the trial court upon motion by Pulloquinga.

this appeal.  As indicated, after a lengthy analysis of the facts of the case and the evidence submitted by Pulloquinga, the trial court applied a 1.5 multiplier.    In determining the amount of fees to be awarded, the trial court applied the factors set forth in Florida Patient's Compensation Fund v. Rowe, 472 So. 2d 1145 (Fla. 1985)[2] and the factors from Florida Bar Rule 4-1.5(b) (A).  As to those factors, the court found that the case was not a "run of the mill" case because Citizens utilized defenses of arson, insurance fraud, material misrepresentation in the insurance application and insurance policy avoidance.  Further, Citizens elected to contest not only whether the house was a "total loss," but Pulloquinga's ownership interest in the home, whether it was actually her homestead and argued that she ran a business out of the home.[3]

The trial court further found that Citizens' positions required "significant high quality time, labor and effort" by Pulloquinga's counsel, who obtained an excellent result of full policy limits.  The trial court also found that the difficulty and complexity of the positions taken by Citizens precluded work on other cases and interfered with Pulloquinga's counsel's ability to procure other new business.  Additional findings were made that the amounts involved, subject matter, responsibility and significance of the matter were of the utmost importance

---

[2]  As modified by Standard Guaranty Ins. Co. v. Quanstrom, 555 So. 2d 828 (Fla. 1990).

[3]  Citizens also went so far as to contest the value of DVDs destroyed by the fire and valued at $19.

because the case involved the total destruction of Pulloquinga's home and personal property, leaving her and her family with nothing, and that there were significant time limitations imposed by Pulloquinga's difficult circumstance of having to keep her mortgage current for over two years, despite not being able to live in the home, while also being relegated to "meager living conditions" during that time. We agree with the trial court that the record supported each of those findings as well as the hourly rates and number of hours granted.

With regard to the application of a multiplier, the trial court analyzed the three factors set forth in Standard Guaranty Ins. Co. v. Quanstrom, 555 So. 2d 828 (Fla. 1990): (1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors set forth in Rowe are applicable, especially the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client.

As to the first factor, the trial court found, based on testimony, that there was no other counsel in the relevant market who would agree to represent Pulloquinga under the fee arrangement she needed in light of her financial situation. The evidence showed that Pulloquinga interviewed seven attorneys who would have accepted her case under an up-front fee arrangement and a few others who would have accepted the case if she had been willing to agree to a partial settlement. However, she was not financially able to pay an up-front fee and could not agree to

5

allow a partial settlement due to the amount remaining on her mortgage. In other words, she was forced into an all or nothing proposition with regard to recovery on her policy and required counsel who would agree to pursue that position.

Applying TRG Columbus Development Venture, Ltd. v. Sifontes, 163 So. 3d 548 553 (Fla. 3d DCA 2015) we conclude that the trial court was correct in determining that such evidence supported application of a multiplier. In Sifontes a condominium sued a potential purchaser who refused to close on a completed condominium and who demanded return of his deposit. The potential purchaser succeeded in his claim and was awarded attorneys' fees. The trial court awarded a multiplier to the potential purchaser and the condominium appealed arguing that the purchaser "presented no evidence to demonstrate that the relevant market required a contingency fee multiplier to obtain competent counsel." Id. at 552. In rejecting that argument, this Court stated:

> [E]vidence was adduced during an evidentiary hearing that many South Florida lawyers were taking condominium deposit recovery cases on a contingency fee basis, intending to settle those cases for a tiny percentage of the full deposit without going to trial. The trial court heard direct evidence that competent counsel willing to both take such a case on contingency fee basis *and* to try such cases to final judgment were few in number. Thus, with particular regard to Quanstrom's first prong, the trial court's finding in favor of a contingency fee multiplier is supported by competent substantial evidence.

Id. at 553. Similarly here, the trial court heard direct evidence that there were no other attorneys willing to accept

6

Pulloquinga's case who were willing to take the case on a contingency *and* to try it to final judgment. We conclude that the finding in favor of the multiplier on that basis is thus supported by competent substantial evidence and cannot be considered an abuse of discretion by the trial court. See, Michnal v. Palm Coast Dev., Inc., 842 So. 2d 927, 934 (Fla. 4th DCA 2003) ("Further expounding on this issue, the Supreme Court has noted a primary rationale for the contingency risk multiplier is to provide access to competent counsel for those who could not afford it. [citation omitted]. Multipliers are intended to level the playing field, to provide litigants, who may otherwise lack the resources, to obtain competent counsel, as a means of access to the legal system."); see also, Zunde v. Int'l Paper Co., 13 Fla. L. Weekly Fed. D346 (M.D. Fla. 2000) (applying multiplier where "defendant's argument ignores the financial condition of this particular plaintiff and that he is a lone individual [versus] a large business entity."); Maltzer v. Provident Life and Accident Ins. Co., 843 F. Supp. 692, 698 (M.D. Fla. 1993) (applying multiplier where "capable predecessor counsel [] was unwilling to continue with the case on contingent fee basis and that several defenses elected by the defendant presaged protracted discovery and a hard fought trial.")

With respect to the other factors to be considered in applying a multiplier set forth in Quantstrom, the trial court also concluded that Pulloquinga's counsel was unable to mitigate against her non-payment of fees because Pulloquinga had no other means by which to pay her counsel and that the time involved by counsel was

7

substantial, the results were the maximum sought and the fee arrangement was entirely contingent. We conclude that Pulloquinga provided sufficient competent evidence to support those conclusions as well and therefore affirm the application of the 1.5 multiplier.

By contrast, we agree with Citizens that the trial court improperly awarded fees for Pulloquinga's counsel's travel time. Under the Statewide Uniform Guidelines for Taxation of Costs in Civil Actions, travel time should not be awarded. In re Amendments to Uniform Guidelines for Taxation of Costs, 915 So. 2d 612, 617 (Fla. 2005). However, Citizens failed to quantify the number of hours or amount of fees it claims were improperly awarded for travel time both in its filings below and in its briefs. It is therefore impossible for this Court to determine the amount by which the fee award should be reduced and we are thus required to remand to the trial court with instructions to reduce the amount of fees awarded by the amount which the evidence supports reflects travel time by Pulloquinga's counsel. Pulloquinga's counsel's travel expenses should also not have been awarded for the same reason. Id. We therefore instruct the trial court to reduce Pulloquinga's cost by the amount of $2,357.09 for such expenses.

Lastly, we agree with Citizens that the trial court should not have awarded costs in the form of back-up expert fees where Pulloquinga did not establish the necessity of the fee. Kendall Racquetball Invs., Ltd. v. Green Cos., Inc. of Fla., 657 So. 2d 1187, 188 (Fla. 3d DCA 1995). We therefore also instruct the trial

8

court to reduce Pulloquinga's costs award by $7,500.00 for the back-up expert fees. We affirm on all other issues.

Affirmed in part and reversed in part, with instructions.